296 F.2d 167
 Owen L. LARSON, Local Agent of United Benefit Fire Insurance
Company, Omaha, Nebraska, and United Benefit Fire
Insurance Company, Omaha, Nebraska, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 16660.
 United States Court of Appeals Eighth Circuit.
 Nov. 27, 1961.
 
 James L McMullin, Kansas City, Mo., and Austin F. Shute, Kansas City, Mo., were on the brief, for appellants.
 F. Russell Millin, U.S. Atty., Kansas City, Mo., and John S. Boyer, Jr., Asst. U.S. Atty., Kansas City, Mo., were on the brief, for appellee.
 Before VOGEL, VAN OOSTERHOUT and BLACKMUN, Circuit Jdges.
 VOGEL, Circuit Judge.
 
 
 1
 Owen L. Larson, Loca Agent of United Benefit Fire Insurance Company, Omaha, Nebraska, and United Benefit Fire Insurance Company, Omaha, Nebraska, are appealing herein from an order of the District Court denying their motion for remission of bond forfeiture.
 
 
 2
 On August 24, 1960, a complaint was filed against one Thomas E. Fleming, Jr., charging him with a violation of the Dyer Act, 18 U.S.C.A. 2312. On the following day, August 25, 1960, Fleming appeared before a United States Commissioner and waived preliminary hearing. His bond was fixed by the Commissioner at $6,000. On the same day a court appearance bond in that amount was filed by Fleming as principal and United Benefit Fire Insurance Company, Omaha, Nebraska, as surety through Owen L. Larson, its attorney-infact. The condition of the bond was that Fleming
 
 
 3
 '* * * appear in the United States District Court for the Western District of Missouri at Kansas City, Missouri on September 2, 1960 at 9:30 o'clock A.M. and in accordance with all orders and directions of the court relating to the appearance of the defendant before the court in the above entitled case * * *.'
 
 
 4
 It is not denied that in addition thereto Fleming and his bondsman, Larson, were notified that the arraignmentg was set for Friday morning, September 2, 1960, by letters from the United States Attorney's office mailed August 30, 1960. No claim of lack of notice as to the time of appearance is made.
 
 
 5
 Three days after Fleming made bond, he and his brother-in-law, John Edward Hardison, a co-defendant for whom the same surety stood bond, were arrested at Kansas City, Missouri, by local police who confiscated their car and suspicious goods in their possession, but later released the suspects 'after the lapse of the 20-hour period of lawful arrest under Missouri law', and 'upon threat of habeas corpus proceedings being instituted.' (District Court's unpublished Memorandum and Order, filed November 23, 1960.) Herein the government claims that at this point Larson had knowledge of such activity, that he made no effort to surrender Fleming but instead immediately arranged for and underwrote the purchase of another automobil to take the place of the one that had bee confiscated, even though, as stated by the trial judge
 
 
 6
 '* * * the 1950 Buick autombile that was in the possession of Fleming and Hardison, on August 28, 1960, contained presumptively stolen goods since they remain unclaimed in the possession of the Kansas City Police Department.'
 
 
 7
 (District Court's unpublished Memorandum and Order, filed November 23, 1960.)
 
 
 8
 On September 2, 1960, upon Fleming's case being called for arraignment, he failed to appear. Larson did appear in court and explained that the night before he had received a telephone call from Fleming, who indicated that he was going to Savannah, Missouri, but that he would meet his bondsman at nine o'clock the next morning. The court thereupon directed that a warrant issue, that Fleming be taken and held without bond and be brought directly before the court. The same day the court entered an order of forfeiture.
 
 
 9
 By September 14, 1960, the forfeiture not having been paid, an order was filed directing that execution issue. The execution was returned unsatisfied. On September 20, 1960, the District Court entered an order suspending the authority of the United Benefit Fire Insurance Company to write bail bonds and surety bonds in the Western District of Missouri. On September 21, 1960, the forfeiture was paid, not by the surety, United Benefit Fire Insurance Company, but by the Central Casualty Company of Evanston, Illinois.
 
 
 10
 On September 29, 1960, during the time Fleming was a fugitive, the grand jury returned an indictment against him and Hardison. The indictment charged violations of the Dyer Act and conspiracy.
 
 
 11
 On the morning of October 16, 1960, Fleming returned to Kansas City with the intention of turning himself over to the authorities. He called his wife on the telephone just prior to reaching home, telling her of his intentions. She, in turn, immediately notifed the bondsman, the local police and the Federal Bureau of Investigation. In the company of one Bradshaw (also in the bail bond business), Larson went to Fleming's home, took Fleming into custody while the place was surrounded by local police, and then turned him over to the authorities. On October 21, 1960, a motion for remission of bond forfeiture was filed, together with suggestions supportive thereof. Larson claimed to have spent considerable time, effort and money in attempting to apprehend Fleming, including the offering of a $500 reward for information leading to his apprehension, which Larson claimed would have to be paid. Counsel stated in his suggestions in support of the motion:
 
 
 12
 'Considering the amount of time and effort that Owen L. Larson has put in to returning the defendant Fleming into the custody of the United States Government, and considering further the personal expense that he has had in the apprehension of the defendant Fleming, including the bond forfeiture itself, it is urged that justice does not require enforcement of the forfeiture. Realizing that the Court has the complete discretion as to what to do in this particular case, it is prayed that the Court exercise its discretion in a manner favorable to the petitioners.'
 
 
 13
 The government strongly resisted the motion for remission of bond forfeiture, pointing out that Fleming's failure to appear was willful, that he was gone from September 2nd to October 16th, that while he was apprehended at his residence by Larson, he had nevertheless returned of his own accord and had called his wife, intending to turn himself in, that at the time Larson apprehended Fleming the residence was surrounded by local police, that there was no evidence that any reward had been paid or that it would have to be paid, and that there was an inordinate delay in the payment of the forfeiture, such payment not being made until after execution on the judgment had been issued and returned unsatisfied.
 
 
 14
 On November 23, 1960, the District Court denied the motin for remission and in so doing stated:
 
 
 15
 'The forfeiture of bail of Thomas E. Fleming, Jr., was satisfied by draft of 'Central Casualty Company, of Evanston, Illinois', drawn on Exchange National Bank Chicago, Illinois, on the 'Central Casualty Company Deposit Account.' Neither applicant for remission of such payment of bail forfeiture has demonstrated to the satisfaction of this Court the exact interest, if any, they might have in the 'Central Casualty Company Deposit Account.'
 
 
 16
 'Furthermore, this Court is of the opinion that prior to the declaration of this bail forfeiture, Owen L. Larson, individually and as Agent of United Benefit Fire Insurance Company, had knowledge of facts establishing Thomas E. Fleming, Jr., to be an exceptionally high moral bail risk. Notwithstanding such knowledge, Larson failed to surrender Fleming to the Court, as Larson had the right to do, before default bail was actually declared. A surety who is remiss to the moral conduct and movements of his bailee is not, in the opinion of this Court, entitled to remission, in whole or in part, of bail forfeited.'[1]
 
 
 17
 Since March 2, 1946, the date the Federal Rules of Criminal Procedure became effective the exercise of considerable latitude in the remission of bail forfeiture has rester with the District Courts. Rule 46(f)(2) and (4), Federal Rules of Criminal Procedure, 18 U.S.C.A., provides:
 
 
 18
 'Setting Aside. The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture.'
 
 
 19
 'Remission. After entry of such judgment, the court may remit it in whole or in part under the conditions applying to the setting aside of forfeiture in paragraph (2) of this subdivision.'
 
 
 20
 Clearly, in the adoption of Rule 46 there is indicated the intention to substantially broaden the discretion of the District Courts from that which had theretofore existed. Smaldone v. United States, 10 Cir., 1954, 211 F.2d 161, 163; United States v. Davis, 7 Cir., 1953, 202 F.2d 621, 624, certiorari denied sub. nom. Ferguson v. United States, 345 U.S. 998, 73 S.Ct. 1141, 97 L.Ed. 1404. Cf., Continental Casualty Co. v. United States, 1942, 314 U.S. 527, 62 S.Ct. 393, 86 L.Ed. 426, decided before the enactment of Rule 46, Federal Rules of Criminal Procedure, 18 U.S.C.A. It is only where there has been an abuse of discretion that an appellate court may set aside the action of the District Court denying the remission of a forfeiture. We are in full accord with the statement and resolution of the issue by Judge Duffy, speaking for the court in United States v. Davis, supra, wherein he said:
 
 
 21
 '* * * It is evident that under this rule a district court has a discretion to give relief to bondsmen in criminal cases upon default, even though such default be willful. It is stated in Barron and Holtzoff, Federal Practice and Procedure, Vol. 4, Sec. 2507, p. 419, 'Thus the court may now remit the forfeiture even though the defendant willfully defaulted and may base a partial remission upon considerations of expense and inconvenience to the government.'
 
 
 22
 'The government points out that Congressional private acts remitting a portion of the forfeiture were usually enacted where bondsmen produced the defendant, and that such was not the case here. The government argues that at best remission of a forfeiture is granted as an act of grace, United States v. Mack, 295 U.S. 480, 489, 55 S.Ct. 813, 79 L.Ed. 1559, and that in the case at bar the district court did not abuse its discretion.
 
 
 23
 'Although we believe that this is a case where the district court might well have remitted a portion of the amount forfeited, we connot say that there was an abuse of discretion. We must keep in mind that the discretion is to be exercised by the district court and not by a court of review. This court should not substitute its discretion for that of the district court.
 
 
 24
 "The term 'discretion' denotes the absence of a hard and fast rule. The Styria v. Morgan, 186 U.S. 1, 9, 22 S.Ct. 731, 46 L.Ed. 1027. When invoked as a guide to judicial action, it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.' Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520.
 
 
 25
 'This court may feel that the ruling of the district court in failing to remit was severe or even harsh, but unless we conclude that such action was arbitrary and capricious, we are not at liberty to grant any relief-- any more than we could change the sentence here imposed on the defendant, which falls within the statutory limit, even though we might feel it excessive.' 202 F.2d at 624-625.
 
 
 26
 See also Carolina Casualty Ins. Co. v. United States, 5 Cir., 1960, 283 F.2d 248; United States v. Public Service Mutual Ins. Co., 2 Cir., 1960, 282 F.2d 771; Stanton v. United States, 9 Cir., 1955, 226 F.2d 822, 15 Alaska 673.
 
 
 27
 Two cases have been brought to our attention wherein Courts of Appeals have reversed the actions of District Courts in denying remission of forfeiture. Smaldone v. United States, 10 Cir., 1954, 511 F.2d 161, dealt with a situation where the defendant entered a hospital pursuant to arrangements made by physicians of unquestionable ability and standing, and an operation disclosed that he was suffering from acute appendicitis. The Court of Appeals held that the District Court abused its discretion in denying the motion to vacate forfeiture. There is no parallel between Smaldone and the instant case.
 
 
 28
 Dudley v. United States, 5 Cir., 1957, 242 F.2d 656, is also readily distinguishable from the case at bar. There trial was set for March 12th. On February 1st the sureties were notified to produce the two defendants involved by February 3rd. At the hearing on February 3rd neither defendant was present. Bond was forfeited as to Dudley, though prior to the forfeiture Dudley had been arrested on a bench warrant and was in custody in another city in the state, and the court was informed of this fact. The second defendant (Londos) did not appear and his attorney did not know of his whereabouts. His case was continued until February 10th. On February 10th Londos' whereabouts were still unknown and the District Judge stated that he would call the case again on February 17th. On February 17th Londos did not appear, but the court was advised he was in California and would appear in a few days. The court ordered the bond forfeited. Londos voluntarily surrendered on February 21st. Both defendants were brought to trial on the date originally scheduled, March 12th. The Court of Appeals, in reversing the forfeitures, stated:
 
 
 29
 'While, for the reasons heretofore and hereafter stated, we do not find it necessary to determine whether, upon the record in this case, the judgments of forfeiture were invalid, we do hold that they should have been remitted and that, for the failure to do so, the judgments must be reversed with directions to enter remissions as prayed. All of the objects and purposes of the recognizances were effected here. Appellants were timely prosecuted and convicted, and the government has suffered no injury or delay from the occurrences upon the basis of which the forfeitures were predicated. When the facts and circumstances attending the forfeitures and the refusal to remit them are considered, we think it plain that justice did not require the forfeitures, and that upon petition they should have been remitted. Rule 46(f)(2) and (4); Smalldone (sic) v. U.S., 10 Cir., 211 F.2d 161.' 242 F.2d at 659.
 
 
 30
 That is not at all the situation in the instant case. Here injury and delay were suffered by the government by reason of Fleming's departure. The record does not indicate but certainly it is fair to assume that expenditures were had in connection with efforts to apprehend Fleming after his disappearance. See Carolina Casualty Ins. Co. v. United States, supra.
 
 
 31
 Appellant Larson contends that there should be a remission because he has expended time, effort and money in attempting to apprehend Fleming. True enough, Larson makes such claims. However, it is also true that he claims credit for the apprehension of Fleming, but the record does not substantiate that conclusion. Fleming decided to give himself up and Larson's ability to take him into custody was merely a fortuitous circumstance resulting from Fleming's wife calling him (Larson) at the same time she called the authorities. While Larson also claims that he will have to pay a $500 reward, yet there is no showing to support that statement and the record would indicate the contrary.
 
 
 32
 We find nothing in the history or in the record of this case which would justify us in coming to the conclusion that the District Court abused its discretion in determining that the appellants were not entitled to a remission of the forfeiture.
 
 
 33
 Affirmed.
 
 
 
 [1]
 On November 2, 1960, during the pendency of the motion for remission of bond forfeiture, the District Court issued its citation to Owen L. Larson to appear on November 7, 1960, and show cause why he should not be precluded from proffering bail or other bonds to the court under Local Court Rule 21. The hearing was continued to November 10, 1960. It was concerned with the Fleming-Hardison and other cases. Based on such hearing, the court entered an order '* * * precluding Owen L. Larson from proffering bail, surety, or any other bonds to this Court, as agent of United Benefit Fire Insurance Company of Omaha, Nebraska, or any other surety.' It was further ordered that '* * * henceforth when any bail or other bond is proffered to any Division of this Court, with United Benefit Fire Insurance Company of Omaha, Nebraska, as surety thereon, the same be submitted to one of the Judges of this Court before acceptance or approval.' The order was, in effect, concurred in by all three judges of the United States District Court for the Western District of Missouri
 The appellants appear to contend here that this is an appeal from the order suspending Larson from writing bonds in the Western District of Missouri as well as an appeal from the order denying remission of the forfeiture. The order of Larson's suspension was a separate order issued November 23, 1960, following the hearing of November 10, 1960. It was issued the same day as was the order denying remission herein. From both of these orders separate notices of appeal were filed on December 3, 1960. The appeal from the order of suspension was docketed as Owen L. Larson, Agent for United Benefit Fire Insurance Company, and individually, Appellant, v. United States of America, Appellee, No. 16,730. It was dismissed upon the government's motion for failure to perfect the appeal. Mandate therein was issued and filed with the District Court on March 16, 1961. Therefore, the instant appeal is concerned solely with the court's order denying remission of the bond forfeiture.