UNITED STATES of America, Plaintiff,

v.

Paul Edward HORVATH, Jr., and Robert Michael Horvath, Defendants.

Crim. No. 4–82–36.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 25, 1983.

Francis X. Hermann, Asst. U.S. Atty., Minneapolis, Minn., for plaintiff.

Douglas W. Thomson, St. Paul, Minn., for Paul Horvath, Jr.

Joseph Friedberg, Minneapolis, Minn., for Robert Horvath.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

On August 13, 1982, the above-named defendants were found guilty by a jury of certain violations of federal law. Defendant Paul E. Horvath, Jr., was found guilty of conspiracy to defraud the United States

by obstructing the functions of the Internal Revenue Service, in violation of 18 U.S.C. § 371, and of failure to file an income tax return for 1975, in violation of 26 U.S.C. § 7201. Defendant Robert Michael Horvath was also convicted of the conspiracy charge and of failure to file a tax return for the years 1975, 1978 and 1979. After the verdicts were returned, the government requested that the defendants' bonds be revoked and that they be taken into custody, but the court permitted them to remain on bond pending sentencing.

On October 20, 1982 the defendants were sentenced by this court. Each defendant was sentenced to imprisonment for four years and fined $20,000. Defendants continued on bond while their appeals were processed.[1] The matter is now before this court on issues related to a recent revocation of their bonds.

*Background*

On October 4, 1983, the government moved ex parte for revocation of defendants' bonds and bench warrants, and this court issued a confidential order granting the motion. Defendants apparently were taken into custody on the same date, and on October 5 this court's order and the government's motion and supporting affidavit of Special Agent Joseph G.A. Glover were filed.

On October 13, 1983, counsel for defendant Paul Horvath requested immediate judicial review and a hearing. On that same date a Notice of Hearing and Application for Review of Bail Revocation were filed on behalf of Paul Horvath.

A hearing was held in this court on October 17, 1983, at which Paul Horvath and his counsel were present. Counsel for defendant Robert Horvath also appeared and requested leave to join. He reported that Robert Horvath was apparently in the process of being moved from Arizona, the place of his residence and where he was taken into custody. The only testimony offered at the hearing was that of James Christopher Valimont, called by counsel for Robert

Horvath. Specific requests were made, however, on behalf of the defendants.

Paul Horvath moved that he be released on bail, that the affidavit filed in support of the government's ex parte motion be found legally and factually insufficient to permit revocation under 18 U.S.C. § 3148, and that the government be compelled to disclose the identity of an informant mentioned in the affidavit, preparatory to a full hearing, or that the government's application be dismissed. Counsel for Robert Horvath asked that the government be required to affirm or deny that a certain individual named Wilson is the informant. Counsel for Paul Horvath and the government strenuously disagreed on the issue of who has the burden in these proceedings, as well as other procedural questions.

Accordingly, the court asked counsel to brief the issues of who has the burden of proof, the proper scope of the hearing, the standard for testing the government's affidavit, and whether there is a right to disclosure of the identity of the informant. The court gave counsel until October 19, 1983 to submit memoranda. An opportunity was given then to all parties to respond to the initial submissions by the afternoon of October 20, 1983.

All parties submitted initial memoranda, and the government and Paul Horvath submitted responsive memoranda. Robert Horvath also filed a motion, dated October 18, 1983, to compel the government to disclose the identity of the informant pursuant to Rule 16 of the Federal Rules of Criminal Procedure.

*Discussion*

Rule 9(c) of the Federal Rules of Appellate Procedure provides that a decision as to release pending appeal shall be made in accordance with 18 U.S.C. § 3148 and that the "burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant". A similar provision is contained in Rule 46(c) of the Federal Rules of Criminal Procedure which governs the

---

**1.** Oral argument was held before the Eighth Circuit Court of Appeals on October 10, 1983.

period pending sentence or notice of appeal.

■ The adoption of these rules in 1972 reversed the burden of proof, and this principle has been consistently recognized in subsequent judicial decisions. *See United States v. Provenzano*, 605 F.2d 85 (3rd Cir.1979); *United States v. Stanley*, 449 F.Supp. 467 (N.D.Calif.1978), *aff'd* 601 F.2d 380 (9th Cir.1979); *United States v. Miranda*, 442 F.Supp. 786 (S.D.Fla.1977); *United States v. Rodriguez*, 423 F.Supp. 110 (C.D. Cal.1976); *United States v. Parr*, 399 F.Supp. 883 (W.D.Tex.1975); *United States v. Quicksey*, 371 F.Supp. 561 (S.D.W.Va. 1974). Under the law now in effect the burden in bail proceedings is clearly placed upon the defendants after conviction.[2]

Paul Horvath suggests that even if the general rule places the burden on defendants, that burden has shifted to the government because the court permitted the defendants to remain on bond pending appeal after their convictions. No authority is cited for this proposition, but a review of the background underlying this contention may be helpful.

After the jury returned its verdicts herein, the government moved to revoke the defendants' bonds, arguing that there was reason to believe they would flee. Prior to denying the motion, the court considered numerous factors. On the one hand, their own evidence at trial revealed that defendants had violated the law in the past, and there was substantial evidence to support their convictions and to establish that the likely source of any unreported income was drug dealing. Trial testimony also revealed, among other things, assets outside of the United States and in safety deposit boxes, associations with Jimmy Chagra and others involved in illegal drug transactions, and a procedure for the preparation of false travel documents for Chagra associates. On the other hand, the court had the opportunity to observe the defendants throughout the nine week trial and became fully aware of their ties to their families and communities. The defendants made their court appearances, and both assured the court that they would not flee if permitted to remain on bond. Defendants appeared subsequently for sentencing and have continued to report as required. They have requested court permission prior to travel.

The government's recent ex parte motion to revoke defendants' bond was brought on the basis that defendants present a danger to a federal prosecutor if they were to remain on release. The affidavit of Agent Glover states in part that he "has learned through official sources that a death threat has been made against the federal prosecutor ... by Paul and Robert Horvath." It further states that affiant "has learned through a confidential informant of a local police department" that Robert Horvath had "made repeated statements during the past three weeks that Horvaths must kill the federal prosecutor" and that the killing "would be worth $100,000.00 to him." An associate of Robert Horvath is said to have suggested that the death be made to look like a traffic accident, and Paul Horvath is alleged to have "began efforts to secure photos of the federal prosecutor and chart his movements." Finally, it is stated that the "informant has proven reliable in the past."

This is an entirely different basis for denying release than that presented to the court at the conclusion of the trial. After reviewing the motion papers and supporting affidavit and 18 U.S.C. § 3148, the court issued its confidential order revoking defendants' bonds. The court found there was "reason to believe that a danger is

---

**2.** In *United States v. Brown*, 399 F.Supp. 631, 632 (W.D.Okl.1975), cited by Paul Horvath, the government was said to have "assumed the burden"; the court did not discuss the effect of the new rules.

*United States v. Bowdach*, 561 F.2d 1160, 1166–77 (5th Cir.1977), also cited by defendant, held that notice and a hearing were not required prior to the temporary revocation of bond on appeal, but that defendant was entitled to a hearing to determine whether his bond should be permanently revoked. The court did not discuss the burden of proof.

presented to a certain individual if the above-named defendants were to remain on release at this time." The burden is now on the defendants pursuant to Rule 9(c) to establish that they do not present such danger.

Title 18 U.S.C. § 3148 provides that a defendant who has been convicted and has filed an appeal shall be treated in accordance with § 3146

> ... unless the court ... has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist, or if it appears that an appeal is frivolous or taken for delay, the person may be ordered detained ....

Section 3146 provides for "Release in non-capital cases prior to trial" and contains the presumption of the Bail Reform Act of 1966 in favor of release. *See* § 3146(a). Prior to trial a defendant is entitled to release on bail unless such a release would not reasonably assure his appearance, and in that event the court should consider additional conditions of release. *Id.* In assessing which conditions can reasonably assure the defendant's appearance, the court shall consider certain factors "on the basis of available information". § 3146(b).

The presumption in favor of bail contained in § 3146 is modified by § 3148 which applies once a defendant is convicted. After conviction, assurance of appearance is no longer the sole specified purpose for conditions of release. Now danger to any person or the community must also be considered. If a court "has reason to believe" that no conditions of release will reasonably assure a defendant's appearance or that he presents a danger, he shall not be treated according to § 3146. And if "such a risk of flight or danger is believed to exist," he may be detained. Thus, the standard set forth in this statute is "reason to believe" or "believed to exist."

A court may consider a wide variety of sources in making bail or bond decisions. In a thoughtful discussion of bail pending review of judgments of convictions, the Third Circuit Court of Appeals described the type of information which a court can properly consider in determining whether a defendant will pose a danger if released: the nature and circumstances of the crime of which he has been convicted, his presentence report, including information on his prior record and pending criminal charges, his trial demeanor, and "any other information indicative of the defendant's propensity to commit crime generally, or otherwise endanger the community." *United States v. Provenzano*, 605 F.2d 85, 96 (3rd Cir. 1979).

The statutory scheme appears to be consistent with Rule 1101(d)(3) of the Federal Rules of Evidence which provides that the evidentiary rules do not apply to "proceedings with respect to release on bail or otherwise." Section 3146(f) states

> Information stated in, or offered in connection with, any order entered pursuant to this section need not conform to the rules pertaining to the admissibility of evidence in a court of law.

In *United States v. Brown*, 399 F.Supp. 631 (W.D.Okl.1975), cited by defendant Paul Horvath, a government agent testified on "information from reliable informants"; the court ruled that the evidence was admissable under 18 U.S.C. § 3146(f).

Defendants argue that they have a right to disclosure of the informant mentioned in Agent Glover's affidavit. They state a defendant's right to confront witnesses requires disclosure. *Pointer v. Texas*, 380 U.S. 400, 407–8, 85 S.Ct. 1065, 1069–70, 13 L.Ed.2d 923 (1965), upon which they rely, deals with the rights of a defendant in a preliminary hearing prior to trial, not with a bond revocation. They also argue that disclosure of the informant's identity is required by *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).[3]

---

**3.** In *Roviaro* the Supreme Court stated:

A further limitation on the applicability of the [informant's] privilege arises from the funda-

Defendants fail to cite a single case, however, in which a court ordered disclosure of an informant's identity in a bail or bond proceeding. They draw their arguments by analogy from circumstances where different standards of proof, evidentiary rules, and constitutional rights are involved.

The government points out in opposition that the evidentiary rule against hearsay, which is closely related to and protects the right to confront witnesses, does not apply here and cites cases in which bail was revoked on the basis of affidavits of government agents[4] indicating that a witness had been threatened (*United States v. Halloran*, 327 F.Supp. 337 (C.D.Cal.1971)) and a confidential probation report to the court (*Blassingame v. United States*, 242 F.2d 313 (9th Cir.1957)). The government also argues that no prejudice within the meaning of *Roviaro v. United States* exists where defendants know the identity of the informant. *See United States v. Gonzalez*, 555 F.2d 308 (2d Cir.1977). Robert Horvath's witness Valimont testified that an individual named Wilson from Omaha appeared to be the informant.

The procedure followed in *United States v. Stanley*, 449 F.Supp. 467 (N.D.Calif. 1978), *aff'd* 601 F.2d 380 (9th Cir.1979), is instructive on a number of points. Stanley had been released on bail pending appeal. The district court granted an ex parte motion by the government to revoke his bail on the basis of an affidavit of a government agent indicating that Stanley had breached a travel restriction. An evidentiary hearing was held "to provide Stanley an opportunity to refute the charges." 601 F.2d at 381. The district court also held an in camera hearing after the government

represented "that it had evidence of further criminal activity which could not be revealed without jeopardizing its ongoing investigation of a large smuggling operation." 449 F.Supp. at 471. At the conclusion of the hearing, the court found "substantial danger to the community in defendant's continued participation in the massive smuggling operation documented in the Government's evidence" and that defendant had not met his burden of showing "that he will not pose a danger to the community if released" or "that there exist conditions of release which will reasonably assure defendant's nondangerousness." *Id.* at 472. The Ninth Circuit commented that "whether Stanley was a flight risk or a danger to the community and the information received ... during the in camera hearing were relevant to the court's decision not to set new bail." 601 F.2d at 382.

▬ With this background and after a careful review of the parties' contentions and the authorities they cite, certain principles emerge. Any party may produce evidence at the hearing although the burden remains on the defendants. Defendants may seek to meet their burden by calling witnesses or by arguing that there is not reason to believe that they represent a danger. There is no showing, however, that "reason to believe" or the reasonable basis standard set in § 3148 is the same as probable cause under the Fourth Amendment. Nor have the defendants persuaded the court that they have a right to disclosure of the identity of the informant. Confidential sources such as presentence investigation reports, in camera hearings, and affidavits based on hearsay are common in bail or bond proceedings and have been approved by federal appellate courts. *See*

---

mental requirements of fairness. Where the disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the government withholds the information, dismiss the action.

353 U.S. at 60–61, 77 S.Ct. at 628. The Court emphasized that disclosure depends on "the par-

ticular circumstances of each case". *Id.* at 62, 77 S.Ct. at 629.

4. The court notes in passing that the affidavits in *United States v. Holloran* were more detailed than that of Agent Glover. His affidavit does, however, consist of more than merely conclusory statements as was the case in *Chambers v. Mississippi*, 405 U.S. 1205, 92 S.Ct. 754, 30 L.Ed.2d 773 (1972).

e.g., *United States v. Provenzano,* 605 F.2d 85 (3rd Cir.1979); *United States v. Stanley,* 449 F.Supp. 467 (N.D.Calif.1978), *aff'd* 601 F.2d 380 (9th Cir.1979).

 The issue to be determined is whether defendants' bonds should be permanently revoked. *See United States v. Bowdach,* 561 F.2d 1160, 1166 (5th Cir. 1977). The district court has an obligation to make a careful evaluation, recognizing the interests of the defendants and the safety of the community. *United States v. Provenzano,* 605 F.2d 85, 93 (3rd Cir.1979). Paul Horvath is correct that his bond could not be permanently revoked without a written statement of reasons. Rule 9(b) of the Federal Rules of Appellate Procedure. *See also United States v. Provenzano,* 605 F.2d 85 (3rd Cir.1979); *United States v. Bowdach,* 561 F.2d 1160 (5th Cir.1977).

The hearing will reconvene on Monday, October 31, 1983. Defendants will then have the opportunity to refute the charges contained in the affidavit of Agent Glover and to persuade the court that their bonds should not be permanently revoked.

### ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED

1. That the bond revocation hearing be reconvened at 9:30 a.m. on Monday, October 31, 1983.

2. That Paul Horvath's request that he be reinstated on bond prior to the hearing is denied.

3. That Paul Horvath's motion that the court find the affidavit of Agent Glover legally and factually insufficient to permit revocation under 18 U.S.C. § 3148 is denied in so far as the temporary revocation of his bond is concerned.

4. That Paul Horvath's motion to compel disclosure of the identity of the informant prior to the hearing, or in the alternative that the government's application be dismissed, is denied.

5. That Robert Horvath's request that the government be required to affirm or deny that a certain individual named Wilson is the informant is denied.

6. That Robert Horvath's motion to compel disclosure of the identity of the informant is denied.